# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>THE ROCKPORT COMPANY, LLC, *et al.*,<br>                    Debtors.[1] | Chapter 11<br>Case No. 18-11145 (LSS)<br>(Jointly Administered) |
| THE ROCKPORT GROUP, LLC; THE ROCKPORT GROUP HOLDINGS, LLC; TRG 1-P HOLDINGS, LLC; TRG INTERMEDIATE HOLDINGS, LLC; TRG CLASS D, LLC; THE ROCKPORT COMPANY, LLC; DRYDOCK FOOTWEAR, LLC; DD MANAGEMENT SERVICES LLC; ROCKPORT CANADA ULC; ROCKPORT JAPAN K.K.; THE ROCKPORT COMPANY KOREA LTD; ROCKPORT HONG KONG LTD; DONGGUAN ROCKPORT CONSULTING SERVICE CO, LTD.; CALZADOS ROCKPORT S.L.; THE ROCKPORT COMPANY PORTUGAL, UNIPESSOAL, LDA; THE ROCKPORT COMPANY, B.V.; ROCKPORT EUROPE, B.V.; RELAY TECHNICAL SERVICES PRIVATE LIMITED; ROCKPORT INTERNATIONAL LIMITED; ROCKPORT UK HOLDINGS LTD.,<br>                    Plaintiffs,<br>        v.<br>ADIDAS AG and REEBOK INTERNATIONAL LTD.,<br>                    Defendants. | Adversary Proceeding<br>No. 18-50636 (LSS)<br><br>**Re: Adv. Docket No. 4** |

## OBJECTION OF ADIDAS AG AND REEBOK INTERNATIONAL LTD. TO PLAINTIFFS' EMERGENCY MOTION TO EXPEDITE ADVERSARY PROCEEDING

---

[1] The debtors and debtors in possession in these cases and the last four digits of their respective Employer Identification Numbers are: Rockport Blocker, LLC (5097), The Rockport Group Holdings, LLC (3025), TRG 1-P Holdings, LLC (4756), TRG Intermediate Holdings, LLC (8931), TRG Class D, LLC (4757), The Rockport Group, LLC (5559), The Rockport Company, LLC (5456), Drydock Footwear, LLC (7708), DD Management Services LLC (8274), and Rockport Canada ULC (3548). The debtors' mailing address is 1220 Washington Street, West Newton, Massachusetts 02465.

58128/0001-16081785v1

adidas AG ("adidas") and its subsidiary Reebok International Ltd. ("Reebok"), by and through their undersigned counsel, hereby object (the "Objection") to *Plaintiffs' Emergency Motion to Expedite Adversary Proceeding* [Adv. Docket No. 4] (the "Motion").[2] In support of the Objection, Defendants respectfully state as follows:

**OBJECTION**

1. Plaintiffs have requested that this entire proceeding—from filing of the Complaint through trial, including discovery—be adjudicated in *30 days*. That request is simply not reasonable, and Plaintiffs have not shown the requisite cause for expedited adjudication here. *See Anderson v. Davila*, 125 F.3d 148, 156-57 (3d Cir. 1997) (courts are permitted to expedite proceedings for good cause shown but, "as a general rule," should do so "only sparingly"). Moreover, the request for a truncated 30-day trial schedule is not necessary, for the reasons more fully set forth below.

2. The relief requested should be denied because: (i) the Debtors and the Purchaser could not have been surprised by the argument that the Foreign Subsidiaries owe liabilities to adidas, since the stalking horse asset purchase agreement (the "APA") expressly provides for the settlement or adjudication of this liability; (ii) if the sale is in jeopardy, the fault lies with the Debtors, who decided to make an aggressive and unfounded representation as to the Adidas Liability, and not with adidas and Reebok, whose claims are not limited by the Debtors' representations; (iii) the sale need not be in jeopardy because a reasonable escrow structure will restore the Purchaser to the same position it would have enjoyed had the Debtors' representations been accurate, and cause no harm to the Debtors; and (iv) this litigation is fundamentally an intercreditor dispute as to the validity of adidas's and Reebok's structurally senior claims, and no

---

[2] Capitalized terms used in this Objection and not otherwise defined herein shall have the same meanings given to them in the Motion or the Complaint [Adv. Docket No. 1], as applicable.

harm would befall the Debtors' estates from a post-closing adjudication of this adversary proceeding.

**I.   The Foreign Subsidiaries' Liability is Based on the Plain Language of the Underlying Agreements, and the Parties to the APA Anticipated this Dispute.**

3.   The Debtors take issue with adidas and Reebok raising a purportedly "newly minted theory" in their objection to the Debtors' proposed sale of substantially all of their assets [Docket No. 310] (the "Sale Objection"), *i.e.*, that Rockport and each of its affiliates, including the Foreign Subsidiaries, are jointly and severally liable for amounts owed to adidas or its affiliates in connection with the Subsequent Closings (the "Adidas Liability").

4.   The Debtors have asserted, without any evidentiary support, that their proposed sale is in jeopardy because, among other things, the Debtors may have breached the APA by misrepresenting the extent of the Adidas Liability. If the sale is actually at risk, the Debtors' decision to make a representation in the APA about the Adidas Liability is the cause.

5.   The liability of the Foreign Subsidiaries is not based on a new theory. Rather, it was expressly provided for in the underlying agreements.

6.   The plain language of the Management Agreement makes Rockport and each of its affiliates, including the Foreign Subsidiaries, jointly and severally liable for the Adidas Liability. The Adidas Liability is based on obligations of "Buyer" under the Management Agreement. Buyer is defined in the Management Agreement as "[Rockport] together with its Affiliates." Management Agreement, Preamble. Rockport's "Affiliates," as defined in the Master Purchase Agreement ("MPA"),[3] means, "with respect to [Rockport] *at any time*, each Person directly or indirectly controlling, controlled by or under direct or indirect common control

---

[3]   The Management Agreement refers to the MPA for the definition of "Affiliates" and other terms. Management Agreement, Preamble.

with [Rockport] at such time." MPA § 1 (definition of "Affiliate") (emphasis added). Therefore, Plaintiffs' argument that the Foreign Subsidiaries did not exist at the time of the sale and, therefore, are not "Affiliates," *see* Motion ¶ 7, ignores the phrase "at any time," which unambiguously places to-be-formed entities such as the Foreign Subsidiaries within the meaning of Rockport's "Affiliates."

7.  The Foreign Subsidiaries each executed an Asset Transfer Agreement, which expressly integrated the Master Purchase Agreement and the Management Agreement, along with all other ancillary agreements, as the "entire agreement" among the parties. Asset Transfer Agreements § 6.4. Accordingly, by executing the Asset Transfer Agreements, the Foreign Subsidiaries formally bound themselves to the benefits of and the burdens under the Management Agreement, including the obligations underlying the Adidas Liability. *See Res. Ventures, Inc. v. Res. Mgmt. Int'l Inc.*, 42 F. Supp. 2d 423, 432-33 (D. Del. 1999) (holding that party's contractual obligations were "defined" in both an original agreement to which it was not a signatory and a subsequent agreement to which it was a signatory where the party agreed in the subsequent agreement that the original was in "full force and effect"); *Weygandt v. Weco, LLC*, C.A. No. 4056-VCS, 2009 WL 1351808, at *4 n.12 (Del. Ch. May 14, 2009) (signatory to a subsequent agreement becomes "bound by the terms of the original agreement where the terms of the original agreement were expressly incorporated into the document the party signed").[4]

8.  The Adidas Liability is joint and several by default under Delaware law, and nothing in the agreements changes that default rule. DEL. CODE ANN. tit. 6 § 2701. ("An

---

[4] Plaintiffs' argument that the Asset Transfer Agreements "expressly provided that the Foreign Subsidiaries will assume no liabilities," *see* Motion ¶ 7.c, is erroneous. The relevant provision of each Asset Transfer Agreement addresses the assumption of liabilities *of* the adidas transferor entity, *i.e.* liabilities adidas incurred in connection with the operation of the Rockport business in the applicable foreign market. Asset Transfer Agreements § 1.2. Section 1.2 does not disclaim or otherwise relieve the applicable Rockport Foreign Subsidiary transferee of any liability it may have *to* adidas or the adidas transferor entity, by virtue of its role as a "Buyer."

obligation or written contract of several persons shall be joint and several, unless otherwise expressed.")[5]

9. The Debtors and the Purchaser expressly anticipated a dispute over the Foreign Subsidiaries' liability to adidas and its affiliates. The APA provides that the Debtors will use "commercially reasonable efforts" to resolve the Adidas Liability "[f]rom the Petition Date until the date that is ***sixty (60) days after the Closing Date*** (the "Initial Resolution Period"). APA § 8.15(a) (emphasis added). If a resolution was not achieved during the Initial Resolution Period, the APA provides for the Debtors to commence litigation against adidas ***post-closing***, without any requirement for such litigation to be expedited. *Id*.

10. Further, the APA specifically provides that the resolution of the Adidas Liability may result in liability "for more than the amount of the Adidas Liability Escrow Amount" (*i.e.*, more than the amount the Debtors represented was owed in respect of the Adidas Liability). APA § 8.15(b). In the event of such resolution, the Debtors agreed that the "Sellers shall be liable for all of such amount, and Purchaser shall have no liability therefor." *Id*. That provision is evidence that the parties expressly negotiated the allocation of the Adidas Liability in excess of the proposed escrow.

11. Finally, at the June 5, 2018 hearing in these Chapter 11 Cases, counsel to adidas and Reebok stated that adidas and its affiliates "have substantial claims against the debtors' estates, as well as against non-debtor affiliates" and, therefore, wanted to state on the record that adidas reserved its rights with respect to its claims against non-debtor affiliates. *See* Transcript of Hearing at 33:12-34:10 (June 5, 2018).

---

[5] There are additional contractual and equitable bases for the liability of the Foreign Subsidiaries for the Adidas Liability. However, because the merits of the claims of adidas and its affiliates are not at issue in the Motion, Defendants will not recite those arguments in this Objection, and, as with all other arguments regarding Plaintiffs' claims, all rights are reserved.

5
58128/0001-16081785v1

12. Accordingly, the Debtors' argument that they were surprised by the assertion of the Adidas Liability against each of the Foreign Subsidiaries is not credible, and the Debtors cannot show cause for expedited adjudication of this adversary proceeding.

## II. The Assertion of Joint and Several Liability Does Not "Imperil" the Proposed Sale.

13. While adidas and Reebok disagree with the inaccurate representations made by the Debtors in the APA, as an accommodation to all of the parties in these Chapter 11 Cases, adidas and Reebok hereby propose a resolution structure (the "Proposed Resolution Structure") that will simultaneously protect adidas's and Reebok's structurally senior claims and remove any impediment to the closing of the sale to the Purchaser:

- Upon consummation of the sale in accordance with the APA, the Debtors shall establish two escrow accounts (the "Escrows"):

    1. the "Adidas Liability Escrow Account" (as defined in the APA), in the amount of approximately $7 million, on account of the Adidas Liability with respect to Rockport Japan K.K. and The Rockport Company Korea, Ltd, on the terms and conditions set forth in the APA;[6] and

    2. a "Foreign Subsidiary Liability Escrow Account," in the amount of approximately $47 million, on account of the Adidas Liability with respect to all Foreign Subsidiaries other than Rockport Japan K.K. and The Rockport Company Korea, Ltd (the "Released Subsidiaries"), which escrowed amount shall be released only pursuant to an order of this Court either determining the extent of the Foreign Subsidiaries' liability to adidas and its affiliates or approving a settlement among the parties to the adversary proceeding.

- Upon the funding of the Escrows from the proceeds of the sale, adidas and its affiliates shall give a full, express and unconditional release of the Released Subsidiaries, Purchaser and its affiliates (excluding Rockport Japan K.K. and The Rockport Company Korea, Ltd) from all liabilities and obligations with respect to the Adidas Liability and shall agree that all claims that would otherwise have been assertable against the Released Subsidiaries shall be asserted only against the Foreign Subsidiary Liability Escrow.

- Defendants will negotiate in good faith an expedited schedule for the resolution of this adversary proceeding.

---

[6] This escrow is already provided for in the APA. APA § 3.1(d)(ii).

14. adidas and Reebok believe that the Proposed Resolution Structure will, among other things: (i) restore the Purchaser to the same position it would have enjoyed had the Debtors' representations been accurate—effectively "curing" the prospective notice of breach issued by the Purchaser—without causing any harm to the Debtors; (ii) permit the sale to the Purchaser to close and allow the Debtors and their estates to maximize the value of their assets as a going concern; (iii) preserve all parties' rights to adjudicate the merits of this adversary proceeding on a customary bankruptcy litigation schedule; and (iv) enhance the likelihood that the parties will be able to reach a commercial resolution of this dispute.

### III. The Issue Presented to the Court is Essentially an Intercreditor Dispute, and the Debtors' Estates Are Not at Risk of Harm.

15. Although Plaintiffs have presented the possibility of harm to the Debtors' estates, in fact, adidas and Reebok understand that the prepetition secured noteholders (the "Secured Noteholders") are the only parties that will be economically impacted by the Adidas Liability.

16. Based on publicly available information, it appears that 100% of the APA proceeds received by the Debtors will inure solely to the benefit of the Secured Noteholders, who incidentally own 100% of the equity interests in the Debtors. Therefore, payouts on the structurally senior Adidas Liability would have an adverse impact only on the Secured Noteholders.

17. Thus, the issue purportedly requiring expedited resolution is, in fact, an intercreditor dispute as to whether some portion of the value of the Debtors that comprises the purchase price should inure to the benefit of adidas and its affiliates—on account of their structurally senior claims—rather than to the benefit of the Secured Noteholders. The expedited resolution of an intercreditor dispute does not justify the relief requested in the Motion,

particularly where an alternative structure is available that would allow the sale to close, mitigate the economic impact on the only affected creditor class, and eliminate any harm to the Debtors.

## RESERVATION OF RIGHTS

18. adidas and Reebok expressly reserve the right to supplement and/or amend this Objection from time to time and at any time. adidas and Reebok further reserve any and all rights to raise any additional objections with respect to the Motion or otherwise with respect to any relief requested as it may affect the interests of adidas or Reebok.

## CONCLUSION

WHEREFORE, adidas and Reebok respectfully request that the Court: (i) deny the relief requested in the Motion; (ii) order the Debtors to segregate and place into escrow an amount equal to the Adidas Liability from the proceeds of the sale to the Purchaser, pending resolution of this adversary proceeding, in accordance with the Proposed Resolution Structure; and (iii) grant such other and further relief to adidas and/or Reebok as the Court deems just and proper.

Dated: July 11, 2018
      Wilmington, Delaware

Respectfully submitted,

/s/ *Norman L. Pernick*
Norman L. Pernick (No. 2291)
Patrick J. Reilley (No. 4451)
**COLE SCHOTZ P.C.**
500 Delaware Avenue
Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 574-2100
Email: npernick@coleschotz.com

-and-

Stephen Moeller-Sally
Marc B. Roitman
Kimberly J. Kodis
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
Email: SSally@ropesgray.com
       Marc.Roitman@ropesgray.com
       Kimberly.Kodis@ropesgray.com

*Counsel to adidas AG and Reebok International Ltd.*